**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Barbara Mowen,

      Plaintiff,

   v.                         Case No. 1:07cv323

Clermont County, Ohio, *et al.*,         Judge Michael R. Barrett

      Defendants.

## <u>ORDER</u>

This matter is before the Court upon the Motion to Dismiss of Clermont County, Clermont County Board of Commissioners, Clermont County Department of Job and Family Services, Clermont County Children's Protective Services, Kevin Harnish, Candace Davis, and Tammy Armstrong ("County Defendants") (Doc. 6); and the Motion to Dismiss of Judge Stephanie A. Wyler (Doc. 16).  Plaintiff having filed Responses in Opposition (Docs. 11, 19), and Defendants having filed Replies (Doc. 13, 22), this matter is now ripe for review.

## I.    <u>BACKGROUND</u>

The following facts are alleged in Plaintiff's Amended Complaint.  Plaintiff and Michael Mowen ("Mr. Mowen") were married in Ohio, and then moved to Texas.  (Doc. 1, ¶ 4.2) After several years of marriage, Plaintiff divorced Mowen and a Texas court granted Plaintiff custody of their minor son ("J.M.").  (Doc. 1, ¶ 4.2, 4.4)  During the custody evaluation with a Texas psychiatrist, Mr. Mowen admitted that he had masturbated in the presence of J.M.  (Id.)  Plaintiff later moved back to Ohio, and resides in Clermont County.

(Id., ¶¶ 3.1, 4.5)  Mr. Mowen also moved back to Ohio and lived with his parents in Kettering, Ohio. (Id., ¶ 4.5)  After J.M. began visiting Mr. Mowen in Kettering, J.M. reported to Plaintiff that Mr. Mowen had committed acts of sexual abuse, including masturbating in his presence.  (Id.)

In September of 2002, Plaintiff received a civil protection order in the Hamilton County Domestic Relations Court against Mr. Mowen.  (Id., ¶ 4.7)  Mr. Mowen was present with counsel during the hearing.  (Id., ¶ 4.6)  The evidence presented at the hearing included testimony by J.M. that Mr. Mowen physically and sexually abused him.  (Id.)

Plaintiff and J.M. periodically sought counseling from Defendant Clermont Counseling Center ("CCC").  (Id., ¶ 4.9)  CCC is a non-profit corporation which provides counseling and psychological services.  (Id., ¶ 3.7)  Plaintiff and J.M. disclosed the past physical and sexual abuse J.M. had suffered.  (Id., ¶ 4.10)  The counselors at CCC never took Plaintiff's or J.M.'s statements seriously, and concluded that it was Plaintiff who posed a threat to J.M.  (Id., ¶ 4.11)  On April 21, 2005, CCC employees persuaded Plaintiff to accompany a Clermont County Deputy Sheriff to a hospital to receive medical care for her injured back.  (Id., ¶ 4.12)  Instead, Plaintiff was involuntarily committed to the psychiatric ward.  (Id.)

On the same day Plaintiff was committed, a CCC employee filed an affidavit with the Clermont County Clerk stating that Plaintiff was mentally ill.  (Id. ¶ 4.13)  Plaintiff alleges that the filing of the affidavit, "in combination with the conspiratorial acts of the other Defendants, caused Plaintiff to be held against her will, in the absence of any legal process, judicial order or judicial review."  (Id.)  Plaintiff alleges "pursuant to the policy, custom and/or standard practice of Clermont County, an order of detention for the seizure

of Plaintiff was issued by a Deputy Clerk of Court without judicial review on or about April 21, 2005, and an Order of Detention was not even docketed into the court record until April 28, 2005." (Id.) (emphasis omitted). Plaintiff alleges that she "had less than four days notice (which included a weekend) to retain counsel and appear at a hearing that, as it turned out, led directly to her permanent loss of custody of her only child." (Id.)

On April 25, 2005, a hearing was held before a magistrate with the Clermont County Probate Court. (Id., ¶ 4.15) Employees of CCC testified that Plaintiff was too fixated on the threats Mr. Mowen posed to her and J.M., and J.M. was exhibiting an unhealthy fear of Mr. Mowen. (Id.) Dr. Rodney Vivian also testified after having only met with Plaintiff for fifteen minutes, and never having met with J.M.. (Id., ¶ 4.14, 4.15) Dr. Vivian stated that Plaintiff presented a grave and imminent risk to J.M., and Plaintiff met the statutory standard in Ohio for involuntary hospitalizations. (Id.) The court found that Plaintiff was mentally ill and ordered her confinement. (Id., ¶ 4.17) After a short review hearing, Plaintiff was released on May 9, 2007. (Id.)

That same day, Defendant Kevin Harnish, an employee of Defendant Clermont County Job and Family Services ("JFS"), filed an affidavit with the Clermont County Court of Common Pleas Juvenile Division. (Id., ¶ 4.18) The affidavit stated that Plaintiff was still confined, and sought an order awarding JFS temporary custody of J.M. (Id., ¶ 4.18) An emergency *ex parte* hearing was scheduled for that day, and Plaintiff's counsel learned of the hearing by chance. (Id.) At the hearing, Harnish appeared with an attorney from Clermont County and stated that JFS would place J.M. temporarily with his godparents on the west side of Cincinnati to maximize Plaintiff's visitation with J.M. (Id.) Plaintiff alleges that the fact that she was no longer confined was not considered in the "pre-ordained

decision to keep [J.M.] separated from Plaintiff."  (Id.)

Plaintiff alleges that JFS, Harnish, and Defendants Candace Davis and Tammy Armstrong, also JFS employees, limited Plaintiff's time with J.M. to one supervised hour per week at the JFS offices.  (Id., ¶ 4.19)  JFS then transferred J.M. to the care of Mr. Mowen's parents in Kettering.  (Id.)  While there, Mr. Mowen was permitted to occasionally keep J.M. overnight at his own house in Xenia, Ohio.  (Id.)

A three-part custody trial was held during the summer of 2006.  (Id., ¶ 4.30)  Plaintiff alleges that the Clermont Defendants "worked to sanitize the history of Mr. Mowen as a sexual abuser of [J.M.]."  (Id., ¶ 4.22)  Defendant Harnish arranged and paid for a polygraph test of Mr. Mowen, the results of which were presented at the trial.  (Id.)  At the trial Mr. Mowen testified that he views pornography and keeps links to pornographic websites on his computer; and these links are not password protected and accessible by anybody.  (Id., ¶ 4.20) However, Plaintiff alleges that "all evidence favorable to Plaintiff and all evidence unfavorable to Mr. Mowen was downplayed or ignored."  (Id., ¶ 4.31) Plaintiff states that the testimony of her treating psychologist, who opined that Plaintiff was not mentally ill, was not considered.  (Id., ¶ 4.32)

At the conclusion of the trial, Defendant Judge Stephanie Wyler awarded permanent custody to Mr. Mowen.  (Id., ¶ 4.30)  Plaintiff was limited to a supervised visitation for two hours each week.  (Id.)  JFS has instead limited Plaintiff to seventy-five minutes a week and placed other unauthorized restrictions on the visitations.  (Id.)  Plaintiff alleges that it is the "clear policy of the Defendants Clermont County and JFS, by and through JFS employees, who have controlled [J.M.'s] time with his mother . . . while maximizing [J.M.'s] time with Mr. Mowen, even though it is Mr. Mowen with the history (and judicial finding) of

abusing [J.M.]." (Id., ¶ 4.21) Plaintiff alleges that the County has "kept tight control of [J.M.] and all information about him, giving Mr. Mowen the upper hand in a custody battle in every possible way and severing the natural relationship between Plaintiff and [J.M.]." (Id.) Plaintiff alleges that she has repeatedly sought hearings regarding the terms of her visitation with J.M., but Judge Wyler has refused. (Id., ¶ 4.29)

Plaintiff argues that Judge Wyler should have been disqualified from presiding over the matter because she is married to a Clermont County commissioner. (Id., ¶¶ 4.25, 4.26) Plaintiff explains that the names of the county commissioners appear on the letterhead of JFS, and the county commissioners have an economic interest in Plaintiff's custody case. (Id., ¶ 4.27) Counsel for Plaintiff previously filed an affidavit of disqualification with the Supreme Court of Ohio seeking to have Judge Wyler removed from the matter, but the court denied disqualification. (Id. ¶¶ 4.27, 4.28) Plaintiff alleges that "[t]he Courts of Ohio thus failed to protect Plaintiff's federal due process right to a fair trial in a proceeding that deprived her of her most cherished liberty interests." (Id. ¶ 28)

Plaintiff appealed Judge Wyler's decision in the custody proceedings, and on August 20, 2007, the appellate court reversed and remanded the case for a new trial. (See Doc. 19-2)[1]

In her Amended Complaint, Plaintiff brings the following claims: (1) seizure without probable cause by CCC Defendants and the County Defendants in violation of the Fourth and Fourteenth Amendments; (2) deprivation of liberty interest in personal security without

---

[1]A court may consider public records and matters of which a court may take judicial notice without converting a motion to dismiss into a motion for summary judgment. *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

due process by CCC Defendants and the County Defendants; (3) deprivation of parental rights and familial relationship without due process by all Defendants; (4) violation of due process by Judge Wyler; and (5) intentional infliction of emotional distress by all Defendants. (Doc. 3)

## II.   ANALYSIS

### A.   Motion to Dismiss Standard

The County Defendants and Defendant Judge Wyler bring their Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

A motion to dismiss based on Rule 12(b)(1) for lack of subject matter jurisdiction must be considered before a motion brought under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Pritchard v. Dent Wizard Intern. Corp*., 210 F.R.D. 591, 592 (S.D.Ohio 2002) (explaining that a Rule 12(b)(6) motion may be decided only after establishing subject matter jurisdiction since the Rule 12(b)(6) challenge becomes moot if the court lacks subject matter jurisdiction), *citing Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir. 1990).

The Sixth Circuit has distinguished between facial and factual attacks among motions to dismiss for lack of subject matter jurisdiction. *Pritchard*, 210 F.R.D. at 592. A facial attack on the subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the pleading. *Ohio Nat. Life Ins. Co. v. U.S.*, 922 F.2d 320, 325 (6th Cir. 1990). In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss. *Id.* On the other hand, a factual attack is "not a challenge to the sufficiency of the pleading's

allegations, but a challenge to the factual existence of subject matter jurisdiction." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  Here, the County Defendant's motion attacks the sufficiency of the pleadings, and is therefore a facial attack.  In reviewing a motion on this basis, the court must take the allegations in the complaint as true and construe them in the light most favorable to the nonmoving party. *Id*.; *Moir v. Cleveland Transit Auth*., 895 F.2d 266, 269 (6th Cir. 1990).

Under Rule 12(b)(6), "a plaintiff's obligation is to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct 1955, 1964-65 (2007) (citations omitted); *Association of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).  Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true."  *Twombly,* at 1964-65 (citations omitted) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

### B.    Subject matter jurisdiction

The County Defendants argue that this Court does not have subject matter jurisdiction because Plaintiff is essentially appealing the custody decision of Clermont County Juvenile Court, and therefore Plaintiff's claims fall within the domestic relations exception to federal subject matter jurisdiction.  Judge Wyler argues that this Court lacks subject matter jurisdiction because Plaintiff's claims are barred by the *Rooker-Feldman* doctrine.

### 1.    Domestic relations exception

The domestic relations exception divests the federal courts of power to issue divorce, alimony, and child custody decrees. *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). However, the Sixth Circuit has recognized federal diversity jurisdiction exists with respect to suits that are actually tort or contract claims having only domestic relations overtones. *Firestone v. Cleveland Trust*, 654 F.2d 1212, 1216 (6th Cir. 1981); *see also Ankenbrandt*, 504 U.S. at 703 (holding that federal court could exercise diversity jurisdiction over claim that husband committed torts against children). On the other hand, the Sixth Circuit has made it clear that a suit whose subject is domestic relations generally, but "brought under the guise of a federal question action" will not be entertained in a federal court. *Firestone*, 654 F.2d at 1215.[2]

Plaintiff is not seeking a return of her custody rights. Instead, Plaintiff's constitutional claims against the County Defendants are based upon her unreasonable seizure and deprivation of due process. Furthermore, Plaintiff's state law claim of intentional infliction of emotional distress is a tort, and does not fall within the domestic relations exception. *Drewes v. Ilnicki*, 863 F.2d 469, 471 (6th Cir. 1988) ("[I]t appears that the domestic relations exception to diversity jurisdiction clearly does not apply to the claims of intentional infliction of emotional distress . . . ." ). Therefore, in taking the allegations in the Amended Complaint as true and construing them in a light most favorable to Plaintiff,

---

[2]The Court notes that other federal circuit courts have only applied the domestic relations exception in diversity cases, and not in cases arising under the constitution or laws of the United States. *Fernos-Lopez v. Figarella Lopez*, 929 F.2d 20, 22 (1st Cir.), *cert. denied*, 502 U.S. 886 (1991); *Flood v. Braaten*, 727 F.2d 303, 308 (3d Cir.1984); *Franks v. Smith*, 717 F.2d 183 (5th Cir.1983); *Ingram v. Hayes*, 866 F.2d 368, 371 (11th Cir. 1988).

the Court finds that it has subject matter jurisdiction over Plaintiff's claims against the County Defendants.

### 2. *Rooker-Feldman*

*Rooker-Feldman* is a doctrine with only limited application. *Coles v. Granville*, 448 F.3d 853, 857 (6th Cir. 2006). The doctrine gets its name from two Supreme Court cases: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). As the Supreme Court has explained: "*Rooker* and *Feldman* exhibit the limited circumstances in which [the Supreme] Court's appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257, precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority, *e.g.*, § 1330 (suits against foreign states), § 1331 (federal question), and § 1332 (diversity)." *Exxon Mobil Corp. v. Saudi Basic Industries Corp*., 544 U.S. 280, 291 (2005). In both *Rooker* and *Feldman*, "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." *Id*.

The Sixth Circuit has explained that the key inquiry in determining whether a claim falls within the scope of the *Rooker-Feldman* doctrine is the source of the injury which the plaintiff alleges in his or her federal complaint:

> If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim.

*McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). However, there are

exceptions to this rule of thumb. For example, if a third party's actions are the product of a state court judgment, then a plaintiff's challenge to those actions are in fact a challenge to the judgment itself. *Id.*, *citing Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 88 (2d Cir. 2005) (finding that the plaintiffs' challenge to a county board of election's refusal to tally certain absentee ballots was in fact a challenge to the state court judgment that the ballots were invalid). As the Sixth Circuit has explained: "The key point is that the source of the injury must be from the state court judgment itself; a claim alleging another source of injury is an independent claim." *Id.* While "these independent claims may deny a legal conclusion of the state court . . . this fact does not lead to a divestment of subject matter jurisdiction in the federal courts." *Id.* at 392.

A close reading of the Amended Complaint demonstrates that Plaintiff's claim against Judge Wyler is that her alleged bias resulted in a violation of Plaintiff's due process. The Supreme Court has explained that "[t]he Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980). As such, the injury of which Plaintiff complains stems from Judge Wyler's alleged bias, not necessarily from the state court judgment entered by her. The Court finds that this conclusion is not contrary to the decision in *Fieger v. Ferry*, 471 F.3d 637 (6th Cir. 2006). In *Fieger*, an attorney brought a section 1983 claim against several Michigan Supreme Court justices based upon their refusal to recuse themselves from cases in which he was involved. *Id.* at 639. The Sixth Circuit first addressed the issue of standing. *Id.* at 643. The court explained that in the context of a declaratory judgment action, allegations of past injury alone are not sufficient to confer standing. *Id.* Instead, a plaintiff "must allege and/or 'demonstrate actual present harm or

a significant possibility of future harm.' " *Id.*, *quoting Peoples Rights Org., Inc. v. City of Columbus*, 152 F.3d 522, 527 (6th Cir. 1998).  The court found that the plaintiff did have standing to pursue his claim for declaratory relief because it was likely that he would again face the recusal issue that he has faced in the past cases.  *Id.* at 643-44.

The Sixth Circuit then explained that to the extent the plaintiff was seeking review of the Justices' past recusal decisions, *Rooker-Feldman* precluded his claims.  *Id.* at 644. Yet, to the extent that the plaintiff challenged the constitutionality of Michigan's recusal rules as applied in future cases, this claim was independent of the past state court judgments, and was not barred by *Rooker-Feldman*.  *Id.* at 646; *cf. Gilbert v. Ferry*, 298 F.Supp.2d 606, 614 (E.D.Mich. 2003) (holding that because the essence of plaintiffs' federal complaint is that the high probability of bias violated their due process rights, and there was no possible avenue by which the court could reach this conclusion without explicitly holding that the Michigan Supreme Court wrongly decided motions for recusal, the *Rooker-Feldman* doctrine prohibited the exercise of subject matter jurisdiction).

Applying these principles to the instant case, the Court finds that Plaintiff has standing to bring a declaratory judgment action based upon the custody proceedings upon remand, but would lack standing to bring a declaratory judgment action based upon the previous custody proceedings.  Morever, any claim with regards to Judge Wyler's past decision regarding the issue of recusal is barred by *Rooker-Feldman*.[3]  To the extent that Plaintiff's constitutional claim is that Judge Wyler's alleged bias will effect Plaintiff's custody

---

[3]There is no indication in the record that Judge Wyler made such a decision.  Instead the decision regarding the Affidavit for Disqualification was made by the Ohio Supreme Court, and that decision is not being challenged in this Court.

proceedings upon remand, the Court finds that *Rooker-Feldman* is not a bar to this claim.

Likewise, Plaintiff's claim for intentional infliction of emotional distress is independent from the state court judgment itself.  Therefore, the Court finds that Plaintiff's claims against Judge Wyler are not barred by the *Rooker-Feldman* doctrine, and the Court has subject matter jurisdiction over the claims.[4]

### C.    Abstention

In the alternative, Judge Wyler argues that this Court must abstain from hearing this case because Plaintiff's case is still pending in the state court.

Generally, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *McClellan v. Carland*, 30 S.Ct. 501, 505 (1910).  However, under the doctrine of abstention, the federal court may decline to exercise or postpone the exercise of its jurisdiction.  *Colorado River Water Conser. Dist. v. U.S.*, 424 U.S. 800, 814 (1976), *citing County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959).  The Supreme Court has explained that abstention:

> is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.  Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.

*Id.*  The Supreme Court has instructed that the circumstances appropriate for abstention are confined to three general categories.  *Id.* at 814.

---

[4]In her Response to Judge Wyler's Motion, Plaintiff states that she did not intend for her First Amended Complaint to suggest that she was suing Judge Wyler for money damages on her claim for intentional infliction of emotional distress.  It is not clear from this statement whether Plaintiff is still seeking declaratory and injunctive relief based upon this claim.

First, abstention is appropriate "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law." *Id.*, *citing*, *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941) (Pullman abstention).  "However, federal courts need not abstain on *Pullman* grounds when a state statute is not 'fairly subject to an interpretation which will render unnecessary' adjudication of the federal constitutional question." *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 236 (1984), *quoting*, *Harman v. Forssenius*, 380 U.S. 528, 535 (1965).  Instead, *Pullman* abstention is limited to uncertain questions of state law.  *Id.* Plaintiff's claims do not present any uncertain questions of state law.  Moreover, judgment by the state court upon remand will not eliminate the need to address the federal constitutional issues raised by Plaintiff's due process claim against Judge Wyler. Therefore, abstention under *Pullman* is not appropriate.

Second, abstention is appropriate where there have "been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Id.*, *citing*, *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) (Burford Abstention).  Plaintiff has not presented any difficult questions of state law which bear on policy problems of substantial import.  Plaintiff complains of the effect that Judge Wyler's alleged bias will have upon the state court proceedings involving the custody of her son.  Therefore, abstention under *Burford* is not appropriate.

Third, absent extraordinary circumstances, a federal court must decline to interfere with pending state civil or criminal judicial proceedings involving important state interests. *See Younger v. Harris*, 401 U.S. 37, 44 (1971); *New Orleans Public Serv., Inc. v. Council*

*of New Orleans*, 491 U.S. 350, 367-68 (1989); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982) (Younger abstention). Three requirements must be met before district court properly invokes *Younger* abstention: "1) there must be on-going state judicial proceedings; 2) those proceedings must implicate important state interests; and 3) there must be an adequate opportunity in the state proceedings to raise constitutional challenges." *American Family Prepaid Legal Corp. v. Columbus Bar Ass'n*, 498 F.3d 328, 332 (6th Cir. 2007), *citing Squire v. Coughlan*, 469 F.3d 551, 555 (6th Cir. 2006) (quotation marks and citation omitted). If these prerequisites are satisfied and "so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain." *Id.*

The Court finds that the first requirement is met. There are on-going state judicial proceedings regarding the custody of J.M. The matter was recently remanded by the appeals court. Those custody proceedings implicate important state interests. *See Kelm v. Hyatt*, 44 F.3d 415, 420 (6th Cir. 1995) (explaining that domestic relations is an area of important state interest). Therefore, the second requirement for *Younger* abstention is met. Finally, the Sixth Circuit has found that Ohio courts provide parents with an adequate opportunity to raise constitutional challenges in custody proceedings. *Meyers v. Franklin County Court of Common Pleas*, 2001 WL 1298942, *3 (6th Cir. Aug. 7, 2001) (unpublished); *see also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987) ("[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy."). Accordingly, the Court finds that the *Younger* abstention doctrine is applicable to Plaintiff's

claims against Judge Wyler.

Although a federal court is normally required to abstain if the requirements of *Younger* are met, abstention is not appropriate in the "extraordinary circumstance that the state tribunal is incompetent by reason of bias." *Gibson v. Berryhill*, 411 U.S. 564, 577-78 (1973). However, one alleging bias must offer "'actual evidence' to overcome the 'presumption of honesty and integrity in those serving as adjudicators.' " *Danner v. Board of Professional Responsibility of Tennessee Supreme Court*, 2007 WL 509064, *2 (M.D.Tenn. Feb. 12, 2007) (unpublished), *citing Canatella v. California*, 404 F.3d 1106, 1112 (9th Cir. 2005) (citation omitted). Plaintiff has not offered any such evidence. To the contrary, in her Amended Complaint Plaintiff states that the Ohio Supreme Court denied Plaintiff's Affidavit of Disqualification and permitted Judge Wyler to continue presiding over the custody proceedings. Moreover, Plaintiff has done nothing more than present conclusory allegations that Judge Wyler's marital relationship with one of the County Commissioners demonstrates her bias.

A district court deciding to abstain under *Younger* has the option of either dismissing the case without prejudice or holding the case in abeyance. *Coles*, 448 F.3d at 866, *citing Carroll v. Mt. Clemens*, 139 F.3d 1072, 1075 (6th Cir. 1998). In exercising this discretion, a district court should: (1) look to the nature of the state proceedings and consider whether a litigant will be able to address his federal claim on the merits in the state court proceeding; and (2) consider whether there are any statute of limitations issues should the case be dismissed and the limitations clock continue to run. *Id*.

As stated previously, Ohio courts provide parents with an adequate opportunity to raise constitutional challenges in custody proceedings. As to the issue of the statute of

limitation, the statute of limitations applicable to a section 1983 action is the state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises. *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516, 519 (6th Cir. 1997). For a section 1983 claim brought in Ohio, the two year general statute of limitations contained in Ohio Revised Code § 2305.10 applies. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). Because the remanded state court custody proceedings have not yet commenced, the statute of limitations will not continue to run on any constitutional claims which Plaintiff may have against Judge Wyler. Therefore, the Court dismisses Plaintiff's section 1983 claim against Judge Wyler.

However, Plaintiff's claim for emotional distress against Judge Wyler still remains. The Court declines to exercise its discretionary jurisdiction over this pendant state claim against Judge Wyler. *See* 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction if it has dismissed all claims subject to original federal jurisdiction). Therefore, Defendant Judge Wyler's Motion to Dismiss is hereby **GRANTED**.

### D. Failure to state a claim under Rule 12(b)(6)

The County Defendants argue that Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted. The arguments of the County Defendants appear to be directed solely towards Plaintiff's claims under section 1983.

Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere. *Tuttle v. Oklahoma City*, 471 U.S. 808 (1985). Section 1983 has two basic requirements: (1) state action that (2) deprived an individual of federal statutory or constitutional rights. *Flint v. Kentucky Dept. of Corrections*, 270 F.3d 340, 351 (6th Cir. 2001), *citing Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir.1998)

*and United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 33 (6th Cir.1992).[5]  The County Defendants argue that Plaintiff has failed to meet the second of these two requirements.

Plaintiff claims that the County Defendants violated her Fourth Amendment rights based upon her involuntary seizure for purposes of a psychiatric evaluation.  Plaintiff claims further that the County Defendants violated her right to procedural and substantive due process based upon her involuntary hospitalization.  Finally, Plaintiff claims that the County Defendants violated her right to procedural and substantive due process based upon her permanent separation for her son.  The County Defendants argue that none of the actions which form the basis of these claims were taken by them.

Plaintiff's allegations specifically referencing the County Defendants are that: (1) On April 21, 2005, Defendant Clermont County Board of Mental Health and Recovery collaborated with other Defendants in scheme to commit Plaintiff to the Hospital psychiatric ward against her will (Doc. 3, ¶ 4.12); (2) Pursuant to the policy, custom and/or standard practice of Clermont County, an order of detention for the seizure of Plaintiff was issued

---

[5]42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

by a Deputy Clerk of Court without judicial review on or about April 21, 2005 (Id., ¶ 4.13); (3) Defendant Kevin Harnish filed an affidavit in Juvenile Court (Id., ¶ 4.18); (4) On May 9, 2005 Harnish appeared in Juvenile Court with a County attorney and persuaded the Court to grant temporary custody of J.M. to Clermont County Department of Job and Family Services with placement with his godparents (Id.); (5) Defendants Harnish, Davis, and Armstrong limited Plaintiff's visitation and access to her son (Id.); (6) Defendants Clermont County Department of Job and Family Services, Harnish, Davis, and Armstrong worked to reunify J.M. with his father and transferred the placement of J.M. to his paternal grandparents (Id., ¶ 4.19); (7) It has been the policy of Defendants Clermont County and Clermont County Department of Job and Family Services to strictly supervise and minimize J.M.'s time with Plaintiff while maximizing his time with his father (Id., ¶ 4.21); (8) Defendant Harnish admitted to Plaintiff's attorneys that Clermont County Department of Job and Family Services considered Mr. Mowen to be the better parent and that Clermont County Department of Job and Family Services was working toward transferring J.M. to Mr. Mowen's permanent custody (Id.); (9) Defendant Harnish along with his supervisor, arranged for a polygraph test to be administered to Mr. Mowen for investigating Plaintiff's allegations of sexual misconduct of her former husband (Id., ¶ 4.22).

Plaintiff alleges that the County's policy, custom and/or standard practice resulted in her seizure and involuntary hospitalization which was a violation of her Fourth Amendment rights. The Sixth Circuit has held that "[t]he Fourth Amendment requires an official seizing and detaining a person for a psychiatric evaluation to have probable cause to believe that the person is dangerous to himself or others." *Fisher v. Harden*, 398 F.3d 837, 846 (6th Cir. 2005), *quoting Monday v. Oullette*, 118 F.3d 1099, 1102 (6th Cir. 1997).

Plaintiff alleges that the County Defendants lacked probable cause to believe she was dangerous to herself or others because she had not committed a crime, had not inflicted physical harm upon J.M. or anyone else, had not threatened to inflict harm upon J.M. or anyone else, posed no future threat of harm to J.M. or anyone else, and had always provided for J.M.'s needs.  The Court finds that Plaintiff's Amended Complaint states a claim that the County Defendants violated Plaintiff's Fourth Amendment rights based upon her seizure and involuntary hospitalization.

Plaintiff also alleges that her seizure and involuntary hospitalization was a violation of her procedural and substantive due process claims.

The Supreme Court has made it clear that "[t]he involuntary civil commitment of an individual to a state mental hospital involves a substantial deprivation of liberty within the meaning of the Due Process Clause of the Fourteenth Amendment." *Addington v. Texas*, 441 U.S. 418 (1979); *see also Humphrey v. Cady*, 405 U.S. 504, 509 (1972) (holding that a commitment to a mental hospital produces "a massive curtailment of liberty").  The Supreme Court has also made it clear that "[a]mong the historic liberties" protected by the Due Process Clause is the "right to be free from, and to obtain judicial relief for, unjustified intrusions on personal security." *Vitek v. Jones*, 445 U.S. 480, 491-92 (1980), *quoting Ingraham v. Wright*, 430 U.S. 651, 673 (1977).

To state a cognizable § 1983 claim based on the deprivation of procedural due process, the government's conduct in depriving a person of a protected liberty interest must go beyond mere negligence and must instead be grossly negligent, deliberately indifferent, or intentional. *Howard v. Grinage*, 82 F.3d 1343, 1350 (6th Cir. 1996).  Plaintiff alleges that the County Defendants "maliciously elected to ambush Plaintiff via the unconstitutional

detention procedures of Clermont County rather than to provide Plaintiff with fair notice and due process." (Doc. 3, ¶ 4.13) The Court finds that this allegation is sufficient to support a procedural due process claim.

"The doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed has come to be known as substantive due process." *Does v. Munoz*, 507 F.3d 961, 964 (6th Cir. 2007), *quoting Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003) (citation omitted). In the context of section 1983 actions, claims for violation of substantive due process typically fall under two categories: "(1) deprivations of a particular constitutional guarantee; and (2) actions that 'shock the conscience.'" *Valot v. Southeast Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997). Plaintiff's substantive due process claim falls within the first category. Plaintiff alleges that the County Defendants deprived her of her liberty interest in personal security by confining her involuntarily to a psychiatric ward. (Doc. 3, ¶ 4.13) Therefore, the Court finds that Plaintiff has sufficiently alleged that the County Defendants violated her substantive due process on this basis.

Plaintiff also claims that the County Defendants deprived her of her procedural and substantive due process based upon her permanent separation for her son. "[T]he Constitution recognizes both a protectible procedural due process interest in parenting a child and a substantive fundamental right to raise one's child." *Bartell v. Lohiser*, 215 F.3d 550, 557 (6th Cir. 2000), *citing Michael H. v. Gerald D.*, 491 U.S. 110, 119-123 (1989); *M.L.B. v. S.L.J.*, 519 U.S. 102, 116 (1996); *Vinson v. Campbell County Fiscal Court*, 820 F.2d 194, 200 (6th Cir. 1987). Plaintiff alleges the County Defendants took various actions related to the custody of her son in which she was not afforded due process. Plaintiff also

alleges that the County Defendants have limited her visitation with and access to her son. The Court finds that these allegations support claims for procedural and substantive due process.

Finally, Plaintiff claims that all the Defendants were participants in a conspiracy to violate her constitutional rights.  "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983."  *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003), *citing Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).  Plaintiff alleges that the County Defendants conspired with Clermont Counseling Center for the purposes of removing J.M. from her custody.  Plaintiff outlines this plan in sufficient detail in her allegations to support a claim of conspiracy under section 1983.  Therefore, the Court finds that the County Defendants' Motion to Dismiss is hereby DENIED.

**III.** **CONCLUSION**

Based on the foregoing, it is hereby **ORDERED** that:

1.     The Motion to Dismiss of Clermont County, Clermont County Board of Commissioners, Clermont County Department of Job and Family Services, Clermont County Children's Protective Services, Kevin Harnish, Candace Davis, and Tammy Armstrong (Doc. 6) is **DENIED**; and

2.     The Motion to Dismiss of Judge Stephanie A. Wyler (Doc. 16) is **GRANTED**. Accordingly, Defendant Judge Wyler shall be dismissed as a party from this case, and all claims against Judge Wyler shall be dismissed without prejudice.

**IT IS SO ORDERED.**

         */s/ Michael R. Barrett*
          Michael R. Barrett, Judge
          United States District Court